**FILED**
CLERK, U.S. DISTRICT COURT

3/8/2023

CENTRAL DISTRICT OF CALIFORNIA
BY: _____JB_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 2:23-cr-00100-SPG |
| Plaintiff, | I N F O R M A T I O N |
| v. | [18 U.S.C. § 1347: Health Care Fraud] |
| PAUL MANSOUR, | |
| Defendant. | |

The United States Attorney charges:

[18 U.S.C. §§ 1347, 2(b)]

A.  INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1.  Defendant PAUL MANSOUR was a resident of Sierra Madre, California.  Defendant MANSOUR was a pharmacist licensed in the State of California and co-owned Mansour Partners, Inc., also doing business as Best Buy Drugs ("Best Buy"), a pharmacy located at 29 North Baldwin Avenue, Sierra Madre, California.

The Medicare Program

2.  Medicare was a federal health care benefit program, affecting commerce, that provided benefits to individuals who were 65 years and older or disabled.  Medicare was administered by the

Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services.

3. Individuals who qualified for Medicare benefits were referred to as Medicare "beneficiaries." Each beneficiary was given a unique health insurance claim number.

4. Medicare programs covering different types of benefits were separated into different program "parts." Part D of Medicare (the "Medicare Part D Program") subsidized the costs of prescription drugs for Medicare beneficiaries in the United States. The Medicare Part D Program was enacted as part of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, and went into effect on January 1, 2006.

5. In order to receive Medicare Part D Program benefits, a beneficiary had to be enrolled in a Medicare drug plan. Medicare drug plans were operated by private companies approved by Medicare. Those companies were often referred to as drug plan "sponsors." A beneficiary in a Medicare drug plan could fill a prescription at a pharmacy and use his or her plan to pay for some or all of the prescription.

6. A pharmacy could participate in the Medicare Part D Program by entering into a retail network agreement directly with a drug plan sponsor; with one or more Pharmacy Benefit Managers ("PBMs"); or with a Pharmacy Services Administration Organization, which would, in turn, contract with PBMs on behalf of the pharmacy. A PBM acted on behalf of one or more drug plans. Through a plan's PBM, a pharmacy could join the drug plan's network. When a Medicare Part D Program beneficiary presented a prescription to a pharmacy, the pharmacy submitted a claim either directly to the drug plan sponsor or to a

PBM representing the beneficiary's Medicare drug plan.  The drug plan sponsor or PBM determined whether the pharmacy was entitled to payment for each claim and periodically paid the pharmacy for outstanding claims.  The drug plan's sponsor reimbursed the PBM for its payments to the pharmacy.

7.   Medicare, through CMS, compensated Medicare drug plan sponsors.  Medicare paid the drug plan sponsors a monthly fee for each Medicare beneficiary enrolled in the sponsor's drug plan.  Such payments were called capitation fees.  The capitation fee was adjusted periodically based on various factors, including each beneficiary's medical conditions.  In addition, in some cases where a drug plan sponsor's expenses for a beneficiary's prescription drugs exceeded that beneficiary's capitation fee, Medicare reimbursed the drug plan sponsor for a portion of those additional expenses.

8.   Medicare and Medicare drug plans (collectively, "Medicare") were health care benefit programs, as defined by Title 18, United States Code, Section 24(b).

B.   THE SCHEME TO DEFRAUD

9.   Beginning no later than in or around January 2017, and continuing through in or around June 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendant MANSOUR, together with others known and unknown to the United States Attorney, knowingly, willfully, and with the intent to defraud, executed a scheme and artifice:  (1) to defraud a health care benefit program, namely, Medicare, as to material matters; and (2) to obtain money from Medicare by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of

material facts, in connection with the delivery of and payment for health care benefits, items, and services.

10. The fraudulent scheme operated, in substance, as follows:

   a. Defendant MANSOUR created fictitious patient profiles in the Best Buy digital filing system, using fictitious names, dates of birth, and addresses. Defendant MANSOUR thereafter added fraudulent prescription medication entries to these fictitious patient files, which duplicated prescriptions for medications provided to actual Best Buy patients, without the permission or knowledge of the physicians whose prescriptions for actual patients had been fraudulently duplicated on these fictitious prescriptions and patient profiles.

   b. Defendant MANSOUR then knowingly and willfully submitted and caused to be submitted false and fraudulent claims to Medicare for the prescriptions created on the fictitious patient profiles, billing Medicare for the fraudulent and fictitious prescriptions in the names of actual Best Buy patients. In doing so, defendant MANSOUR would falsely represent and maintain the pretense that Best Buy had dispensed the additional prescription drugs to the beneficiaries, even though, as defendant MANSOUR then knew, Best Buy had not dispensed such additional prescription drugs to the beneficiaries.

   c. As a result of the false and fraudulent claims defendant MANSOUR submitted and caused to be submitted, Medicare made payments to a bank account controlled by defendant MANSOUR.

   d. As the result of the submission to Medicare of the false and fraudulent claims defendant MANSOUR submitted and caused to

be submitted, Medicare made payments to Best Buy of between at least approximately $600,000 and $1,047,243.

C.  EXECUTION OF THE FRAUDULENT SCHEME

11.  On or about September 7, 2021, within the Central District of California, and elsewhere, defendant MANSOUR, together with others known and unknown to the United States Attorney, knowingly and willfully executed the above-described fraudulent scheme by submitting and causing to be submitted to Medicare false and fraudulent claim number 516504054291/0000576805526, for beneficiary C.W., for prescription drug Pregabalin, in the amount of $45.50.

E. MARTIN ESTRADA
United States Attorney

*Scott M. Garringer*
*Deputy Chief, Criminal Division For:*

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

ADAM P. SCHLEIFER
Assistant United States Attorney
Acting Deputy Chief, Major Frauds Section

GLENN S. LEON
Chief, Fraud Section
U.S. Department of Justice

JUSTIN P. GIVENS
Trial Attorney, Fraud Section
U.S. Department of Justice